IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN SULLIVAN,                          )
                                         )
        Plaintiff,                       )
                                         )        NO. 3:20-cv-00752
v.                                       )        JUDGE RICHARDSON
                                         )
THE NISSAN SUPPLEMENTAL                  )
EXECUTIVE RETIREMENT PLAN II             )
and NISSAN NORTH AMERICA, INC.,          )
                                         )
        Defendants.                      )

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss for Failure to Exhaust

Administrative Remedies. (Doc. No. 21, the "Motion"). Plaintiff has responded. (Doc. No. 28).

Defendants have replied. (Doc. No. 34). The motion is ripe for review.

For the reasons discussed herein, the Motion will be denied.

**FACTUAL BACKGROUND[1]**

Plaintiff worked for Defendant Nissan for over 25 years. (Doc. No. 1 at 4). From 2013-

2017, Plaintiff worked as the Director of Batteries for Nissan. (*Id.*). On April 1, 2017, Plaintiff was

promoted to be Vice President of Powertrain and Battery Operations of Nissan, where he served

until the company sold the department to the Envision Group in April 2019. (*Id.*). When the

batteries department was sold, Plaintiff continued in his employment with Defendant Nissan as the

Vice President of Powertrain. (*Id.*). Plaintiff's last day of employment with Defendant Nissan was

---

[1] The facts set forth herein are alleged in Plaintiff's Complaint and are accepted as true for purposes
of the Motion. To the extent that allegations referred to below are legal conclusions, however, they
are not accepted as true but rather are identified as merely what Plaintiff claims, and not what the
Court is accepting as true for purposes of the Motion.

March 13, 2020. (*Id.* at 2). He resigned to work with his former department (now at Envision). (*Id.*).

During his exit interview on March 12, 2020, Plaintiff "made a verbal request as to the status of his . . . benefit payment"[2] under the Nissan Supplemental Executive Retirement Plan II (the "Plan") (*Id.* at 5).[3] That same day, a representative from Nissan's Human Resources Department sent an email to Susan Gritton, Senior Counsel for Nissan, asking her to assist Plaintiff with questions regarding "his SERP."[4] (*Id.*). Senior Counsel Gritton asked Plaintiff how she could assist him. (*Id.*). Plaintiff responded that he would "just like to understand the process to initiate the SERP II payment for October 2020." (*Id.*). Senior Counsel Gritton responded that the "SERP II Administrative Committee must first make a recommendation as to your eligibility for payment" and that Defendant Nissan must decide whether his new position was in violation of the Plan's non-competition provision. (*Id.*). At her request, Plaintiff responded with information answering her questions regarding his new title, job responsibilities, and start date. (*Id.*). The Plan's non-

---

[2] The Court does not understand what Plaintiff means in referring to a "request"—as opposed to an inquiry—"as to the status" of his benefit payment. In particular, the Court cannot tell *what* Plaintiff "requested" as to that status; perhaps he (allegedly) requested merely an *update* as to the status, but the Court has no way of knowing for certain based on what is in the Complaint.

[3] The parties both seem to agree that the Plan at issue is an ERISA plan. Neither party indicates whether the Plan is, more specifically, an ERISA *top hat* plan. In previously ruling on a Motion to Dismiss in the related case *Vest*, the Court noted that if the type of plan is material or contested, the parties should thoroughly brief their arguments regarding what type of plan is before the Court. (3:19-cv-01021, Doc. No. 34 at 11). For purposes of this Motion, as it appears that the parties do not contest that the Plan is an ERISA plan, the Court will assume that the Plan is an ERISA plan. However, the Court reminds the parties that it expects fulsome briefing on this issue should it become contested or dispositive.

[4] Although it seems clear that the reference to "SERP" was a reference to "the Plan," it is unclear exactly what was meant by "*his* [Plaintiff's] SERP"; likely this was intended to refer to Plaintiff's *rights or benefits* (whatever they may be) *under the Plan* and/or the process to exercise such rights or receive benefits payable (if any).

competition provision states that Defendants' obligation to pay benefits under the Plan is expressly conditioned upon the participant refraining from:

> either directly or indirectly, solely or jointly with other persons or entities, owning, managing, operating, joining, controlling, consulting with, rendering services for or participating in the ownership, management, operation or control of, or being connected as an officer, director, employee, partner, principal, agent, consultant or other representative with, or permitting his/her name to be used with any business or organization (a "Competing Company") with which the Company competes.

(Doc. No. 1-2 at 10).

The Vice President of Human Resources thereafter issued a letter dated April 30, 2020, which Plaintiff calls an "advisory opinion," (Doc. No. 1 at 6), which stated:

> This letter responds to your request for an opinion from the Administrative Committee of the Nissan Supplemental Executive Retirement Plan II ("SERP II") on whether providing services for AESC would create a forfeiture of your benefits under the non-competition clause of the SERP II.
>
> Please be advised that under the terms of the SERP II, only Senior Vice-Presidents of the company, by majority vote, are empowered to make formal, binding decisions regarding possible breaches of the confidentiality and non-competition conditions of the SERP II. Consequently, an opinion from the Administrative Committee and/or any member of the Administrative Committee is advisory only.
>
> The SERP II expressly conditions payment of any benefit on the employee complying with certain confidentiality obligations and on the employee not rendering services directly or indirectly to any "Competing Company" as the SERP II defines that term.
>
> As mentioned above, you have inquired whether providing services for AESC would create a forfeiture of your SERP II benefits. We deem that it would. AESC is a company that manufactures and distributes or plans to manufacture and distribute batteries and/or other component parts to automobiles manufacturers. While Nissan may currently be AESC's sole customer, it is known that AESC's intentions are to sell to other OEMs that compete with Nissan.
>
> Because AESC manufactures and distributes or plans to manufacture and distribute batteries and/or other component parts to OEMS other than Nissan, such employment by you would be in direct violation of the non-competition provision set forth in Section 2.3(b) of the SERP II and would result in a forfeiture of your benefits.

(Doc. No. 1-3, "April Letter").

Plaintiff asserts that Defendants have neither denied nor granted his claim for benefits. (Doc. No. 1 at 3). Plaintiff asserts that the April Letter was not a denial of benefits and that, therefore, he should be deemed to have exhausted his administrative remedies under the Plan. (*Id.* at 2-4). Plaintiff asserts that the Senior Vice Presidents ("SVPs") have failed to vote on whether his work with Envision violates the non-competition provision of the Plan, and he has therefore not received a denial of benefits. (*Id.* at 7).

The Complaint sets forth a single count, for breach of contract under 29 U.S.C. § 1132(a)(1)(B).

This matter is related to two other matters before this Court, *Vest v. The Nissan Supplemental Executive Retirement Plan II et al*, 3:19-cv-01021, and *Delauter v. The Nissan Supplemental Executive Retirement Plan II et al*, 3:20-cv-00609. In *Vest*, this Court previously ruled on a Motion to Dismiss or Alternatively, Compel Arbitration and Stay Proceedings which involved interpreting the same Plan at issue in this case. *Vest v. The Nissan Supplemental Exec. Ret. Plan II*, No. 3:19-CV-1021, 2020 WL 7695261 (M.D. Tenn. Dec. 28, 2020). In *Delauter*, this Court recently denied a Motion to Dismiss for Failure to Exhaust Administrative Remedies. No. 3:20-cv-609,  2021 WL 2515238 (M.D. Tenn. June 18, 2021).

## LEGAL STANDARD

For purposes of a motion to dismiss under 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to

the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## DISCUSSION

Defendants argue that this case should be dismissed pursuant to Rule 12(b)(6) because (supposedly) Plaintiff failed to exhaust the administrative remedies set forth in the Plan prior to filing the lawsuit, including by arbitrating the final review of his claim as (according to Defendants) he was obligated to do.[5] (Doc. No. 22 at 1). As relief alternative to dismissal and if the Court determines the April Letter not to have been a denial, Defendants ask the Court to remand this case. (*Id.* at 16). Plaintiff responds that the Court should deem Plaintiff's claim exhausted and therefore not dismiss the case. (Doc. No. 28 at 9). Plaintiff also argues that remand is inappropriate. (*Id.* at 20).

A. Evidence and Conversion to Summary Judgment[6]

Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this

---

[5] However, the pending Motion does not ask the Court to compel arbitration.

[6] Plaintiff also seems to argue that the motion should be converted to a motion for summary judgment because Defendants are raising failure to exhaust as an affirmative defense. The Court has already thoroughly analyzed this issue in the related *Delauter* case, finding that conversion of a motion to dismiss into a motion for summary judgment is inappropriate when the affirmative defense appears on the face of the Complaint. (3:20-cv-00609, Doc. No. 57). Here, the affirmative defense likewise appears on the face of the Complaint, and Defendants rely only on the Complaint in arguing in support of dismissal. Therefore, the Court is unpersuaded that it should convert the Motion into a motion for summary judgment.

Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

The Court must first determine whether it can properly consider the exhibit attached to Plaintiff's Response. (Doc. No. 28-1). Plaintiff attached a single document containing an email chain (consisting of four emails) between Plaintiff and Carlos Guerra, a Human Resources representative for Defendants. The oldest email is an April 30, 2020 email from Guerra to Plaintiff purportedly attaching both the April Letter and a copy of the Plan. The next oldest email, dated May 6, 2020, is from Plaintiff to Guerra thanking him for sharing the April Letter and asking when the SVPs would make a formal decision on the matter. The next oldest email, dated July 2, 2020, is from Plaintiff to Guerra inquiring about "next steps and timing." The most recent email is an email dated July 10, 2020, from Guerra to Plaintiff advising him of the right to appeal the decision set forth in the April Letter and requesting that Plaintiff let Guerra know if he would like to appeal.

Plaintiff states that this email chain was not referenced in the Complaint, but he argues that the Court should consider the email chain and convert the Motion into a motion for summary judgment. (Doc. No. 28 at 8). Defendants claim that the email chain was "essentially referenced" in the Complaint and that therefore the Court can consider it and still consider the Motion as a motion to dismiss. (Doc. No. 34 at 6-7).

The Court is unpersuaded by the case law cited by Defendants that indicates that "any matters attached to the pleadings are considered part of the pleadings as well as documents that are referred to in the complaint *or* are 'central' to the claim." *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 79 F. Supp. 3d 753, 761 (M.D. Tenn. 2015) (emphasis added); *see also Hira v. New York Life Ins. Co.*, No. 3:12-CV-373, 2014 WL 2177799, at *7 (E.D. Tenn. May 23, 2014) (emphasizing that a document was integral to the complaint, but also noting that the complaint referenced the document); *Kerns v. Caterpillar, Inc.*, 583 F. Supp. 2d 885, 896 (M.D. Tenn. 2008) (same). Though *Snodgrass-King* uses the disjunctive "or," all of the Sixth Circuit cases the opinion cites to use the conjunctive "and." *E.g.*, *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to the plaintiff's claim." (emphasis added)). The undersigned has also regularly stated the rule as requiring both that the document have been referred to in the complaint *and* have been central to the claim, instead of only requiring one scenario to be present. *E.g.*, *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *4 (M.D. Tenn. Mar. 5, 2021) ("When a document is referred to in the pleadings *and* is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." (emphasis added)) (Richardson, J.).

The email chain attached to the Response is not specifically referred to in the Complaint. The email chain apparently included an attachment of the April Letter, which is referenced and quoted at length in the Complaint (which is why Defendants seem to argue that the email chain is "essentially referenced" in the Complaint). However, because the email chain itself is not referenced in the Complaint, the Court finds that it cannot consider it on a motion to dismiss, even though it might be (as both parties argue) integral to the claim therein. The Court additionally declines to convert the Motion into one for summary judgment. Thus, the Court will not consider the email chain in any way, or for any purpose, in resolving the current Motion.[7]

B. Exhaustion[8]

---

[7] Above, the Court has described the email chain because it believes that understanding its substance is necessary to understand why the Court rejects each party's view that (and as to how) the email chain should be considered at this stage. The Court wishes to emphasize that its demonstrated familiarity with the email chain does not mean that the Court will have it in the back of its mind when deciding the instant Motion; rather, the Court is disregarding it entirely, in all respects, at this stage.

[8] In the Reply, Defendants claim that since Plaintiff waited some period of time, instead of immediately filing in federal court, he should be estopped from claiming that he is deemed to have exhausted his administrative remedies. (Doc. No. 34 at 2-3) (citing *Jordan v. Reliance Standard Life Ins. Co.*, No. 1:16-CV-23, 2018 WL 543041, at *4 (E.D. Tenn. Jan. 24, 2018), and *Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1311 (M.D. Fla. 2009)). In their Memorandum in support of their Motion (Doc. No. 22), Defendants did make a general complaint about Plaintiff "wait[ing] months without any further communications with Defendants" after the purported denial, but they did not make an estoppel argument based on Plaintiff's waiting. As the estoppel argument was raised only in (*i.e.*, not until) Defendants' Reply, the Court will not consider it in ruling on this Motion. *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" (citation omitted)). The issue of whether the claim was deemed exhausted was not raised for the first time in Plaintiff's Response, as Defendants focus their Memorandum on exhaustion and reference whether or not Plaintiff should be deemed exhausted. (Doc. No. 22 at 17-18). In the Memorandum in support of the Motion, Defendants actually seem to take the opposite position by saying that Plaintiff "jumped the gun" and "immediately fil[ed] a lawsuit." (*Id.* at 9). Additionally, the Court notes that much of Defendants' estoppel argument is based on the email chain the Court has previously chosen to exclude. Therefore, the Court will not consider this argument in ruling on the present Motion.

Defendants argue that the April Letter was a "denial" and thus something that Plaintiff was required to appeal in order to exhaust his administrative remedies. (Doc. No. 22 at 2, 7). Because Plaintiff did not appeal, Defendants argue, Plaintiff did not exhaust his administrative remedies before filing this lawsuit. (*Id.* at 2, 7-8). In response, Plaintiff argues that it does not matter if the April Letter (which Plaintiff calls an "advisory opinion," as noted above) constituted a "denial," because Defendants have failed to follow their own internal procedure as laid out in the Plan ("Claims Procedure"). (Doc. No. 28 at 9).

"The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). "This is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000).

An applicable regulation provides that:

> Except as provided in paragraph (l)(2) of this section, in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l)(1).

In *Vest*, a case that is related to this one and that involved interpreting the same Plan document, the Court found that "Defendants have failed to follow the Claims Procedure and provide Plaintiff with a decision on the merits of her claim, and the Court will therefore deem Plaintiff's claim exhausted." 2020 WL 7695261, at *8. The Court in *Vest* ultimately found that:

> Because Defendants failed to follow the Claims Procedure as laid out in the Plan, the Court finds that Plaintiff properly exhausted her rights and can bring a claim in federal court. *Nale v. Ford Motor Co. UAW Ret. Plan*, 703 F. Supp. 2d

714, 720 (E.D. Mich. 2010) ("Defendant thus failed to follow its own Claims Procedure. Pursuant to federal regulations, Plaintiff is 'deemed to have exhausted the administrative remedies available under the plan.' " (quoting 29 C.F.R. § 2560.503-1(l)). Having found that Plaintiff is deemed to have exhausted her administrative remedies under the Plan, the Court does not reach the issue of whether it would be appropriate to excuse Plaintiff from the exhaustion requirement on the grounds that exhaustion would be futile.

As a consequence of Plaintiff properly exhausting her administrative remedies, she is "entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(1). As this action is an available remedy under section 502(a) of the Act, she is entitled to pursue it. And she is entitled to do so irrespective of any obligation the Plan purportedly imposes on her to arbitrate; any such arbitration is among the administrative remedies Plaintiff is deemed to have exhausted. And since she has exhausted them, she is not required to exhaust them again (even partially) by returning to them—such as by returning to the administrative remedies (*i.e.*, Claims Procedure) to arbitrate. The fact that arbitration never occurred here does not serve to suggest that it should occur now; instead, it serves merely to highlight the reason why it never occurred: Defendants simply failed to follow their own Claims Procedure and thus "failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* That being so, Plaintiff need not now return to the Claims Procedure disregarded by Defendants.

2020 WL 7695261, at *11.

The Court finds that in this case, too, Defendants have failed to follow the Claims Procedure. Defendants are correct that this case is factually distinct from *Vest*. In *Vest*, the plaintiff received a letter and appealed the denial contained therein. Here, Plaintiff received a similar (but, as discussed below, materially different) letter—the April Letter—but did not appeal (or purport to appeal) anything set forth (or purportedly set forth) in the letter, including any decision purportedly set forth in the letter. Because of this, Defendants contend that "[t]he relevant facts between the two cases are here not the same but reversed. In *Vest*, that plaintiff alleged she was waiting on Defendants to act (*i.e.* issue a decision on her appeal). Defendants here were waiting for Plaintiff to request an appeal. There is no delay on the part of Defendants without a running clock, which could have only been started by Plaintiff requesting an appeal." (Doc. No. 34 at 4-5).

Defendants' characterization is an accurate depiction of the primary difference between these two cases. However, both *Vest* and this case have something important in common: in each case, Defendants rely on the fact that the plaintiff did not comply with a procedure that is not laid out anywhere in the Claims Procedure.

In *Vest*, the Court laid out a summary of the Claims Procedure set forth the Plan:

> The Plan's Claims Procedure, found in Section 7.12 of the Plan, enumerates the process as (a)-(j), with the Arbitration Clause being (j). The Claims Procedure is essentially summarized as: (a) a claim is presented in writing; (b)-(d) a Claims Official, within a reasonable time, considers the claim and issues a determination; if granted, an appropriate distribution will be made, or if denied, the Claims Official will provide written notice of denial within 90 days; (e) the Participant will have a reasonable opportunity to appeal; (f) review by an Administrative Committee will occur within 60 days, "unless special circumstances require an extension of time for processing" in which case a decision shall be rendered as soon as possible but not later than 120 days; (h) a decision will be given in writing; (i) the determination will be binding on all parties unless a court or arbitrator finds it constituted an abuse of discretion; and (j) "[f]urther review of claims shall be solely through confidential arbitration proceedings."

2020 WL 7695261, at *8 (internal citations to the record omitted).

According to this Claims Procedure, the process should have commenced with Plaintiff making a claim in writing, followed by the Claims Official issuing a determination on the claim, and followed (in the event of a denial) by an appeal at the claimant's option. However, here a representative of Defendants instead instructed Plaintiff in an email that:

> The SERP II Administrative Committee must first make a recommendation as to your eligibility for payment. As part of that, one of the issues that must be assessed is whether your position with the battery plant will be a possible violation of the non-competition provision of the SERP plan. To do that, we would request you to provide us with information about your new position, including title, job responsibilities and start date. We also need to know whether the battery plant is supplying batteries or other components to any entity other than Nissan. If so, we would need to know the names of those entities and what they do.

> After we receive this information, we will submit it to the Administrative Committee for a recommendation. Once we receive the committee's recommendation, we will notify you.

(Doc. No. 1-4 at 2). This process outlined in the email, involving a preliminary "recommendation" from the Administrative Committee as to eligibility, is not outlined anywhere in the Plan. The Plan refers to the Administrative Committee only in connection with an appeal (which occurs, if at all, only at a later stage in the Claims Procedure).

Then, in the subsequent April Letter, Defendants provided Plaintiff with further instructions that conflict with the Claims Procedure:

> Please be advised that under the terms of the SERP II, only Senior Vice-Presidents of the company, by majority vote, are empowered to make formal, binding decisions regarding possible breaches of the confidentiality and non-competition conditions of the SERP II. Consequently, an opinion from the Administrative Committee and/or any member of the Administrative Committee is advisory only.

(Doc. No. 1-3). In *Vest*, in which Defendants likewise relied on some alleged role of the Senior Vice Presidents ("SVPs") in the Claims Procedure, the Court discussed at length that a vote of the SVPs is not required at all by the Claims Procedure and that the Plan's reference to the SVPs is instead found in a different section of the Plan entirely:

> The Court is confused by Defendants' counsel's reference to Section 2.3 prescribing "a procedural step" and a type of review that can overturn an initial decision of denial. Section 2.3 appears in an entirely separate section of the Plan than the Claims Procedure laid out in Section 7.12; rather than discussing Claims Procedure, it prescribes certain obligations (of, among other things, nondisclosure and loyalty) of Plan participants, as well as consequences for violating such obligations and a mechanism for deciding whether any alleged violations have in fact occurred. The part of Section 2.3 that counsel appears to have been referencing—the second paragraph of subsection 2.3(b)—states:
>
> > Accordingly, if the Participant is found by a majority vote of the Senior Vice Presidents of the Company to have violated in any way the restrictions and requirements imposed on him by any such nondisclosure and confidentiality agreement and provisions above, or to have engaged in any act of fraud against or disloyalty to the Company (as defined for purposes of Section 2.3(b), or to have disparaged the Company (as defined for purposes of Section 2.3(b)) and/or its management, or if the Participant accepts any position as

13

> an employee of or a consultant to any Competing Company, then the Company, notwithstanding any other provision herein, will have no further obligation to make any payment of any benefit deemed accrued hereunder to the Participant or to the Participant's designated beneficiary or estate.

(*Id.* at 10). Thus, subsection 2.3(b) indicates that if a Plan participant is suspected of having committed any such violation, the SVPs must vote to determine whether she has in fact committed such violation(s), in which case she is effectively disqualified from receiving any further payment under the Plan. Beyond suggesting that a finding (by majority SVP vote) of such disqualifying violation(s) could occur at any time while the Company otherwise has "further obligation to make . . . payment"—*i.e.*, has not made all payments otherwise due to the Plan participant—this subsection otherwise provides no information at all (and certainly no details) on when or how this vote should occur. And Section 3.4 of the Plan provides that payment under the Plan is made in a single lump sum paid "during the month following the six month anniversary of the last day worked." (*Id.* at 12). The time of payment thus identified naturally would arrive after the institution of the Claims Procedure of Section 7.12—after the making, and perhaps even after the granting or denying, of a claim under the Claims Procedure.

The subsection thus indicates that the SVP vote does not necessarily have to be made at the outset of the Claims Procedure for a participant's claim for benefits and could instead be made after an initial determination of a claim. The language of this provision (and its location in the Plan), indicate to the Court that it is not part of the Claims Procedure, but rather a different avenue that Defendants can use at any time (even after a decision to grant benefits) to deny benefits to a Plan beneficiary deemed to have committed a violation of the kind referred to in subsection 2.3(b).

Thus, subsection 2.3(b) itself does not suggest that a determination by SVPs that an employee did not commit the violations referred to in subsection 2.3(b) is a step in the Claims Procedure, let alone a step that must come before any particular step(s) in the Claims Procedure set forth in Section 7.12. Instead, the provision suggests that any determination as to whether an employee committed the violations referred to in Subsection 2.3(b) is a determination made (if at all) outside of the Claims Procedure, at an unspecified time not tied in any way to the steps of the Claims Procedure.

In suggesting otherwise in his email, counsel for Defendants revealed that Defendants simply were not following their Claims Procedure, but rather were injecting unwarranted steps into the procedure that served to delay its completion. In particular, while the SVPs stalled on making a determination under subsection 2.3(b), Defendants apparently ignored the time frames set out in their own Claims Procedure in Section 7.12, which states that "[t]he decision by the review official upon review of a claim shall be made no later than 60 days after his receipt for

review, unless special circumstances require an extension of time for processing, which extension shall be made by the Administrative Committee; in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of such request for review." (Doc. No. 18 at 18-19). From the Plan language, there is no indication that this time period may or should be stayed or otherwise postponed past 120 days if a determination under subsection 2.3(b) happens to remain pending before the SVPs. Instead, as previously discussed, the Claims Procedure does not mention or have any apparent temporal relationship with Section 2.3 of the Plan.

Therefore, to comply with their own Claims Procedure, Defendants should have issued a decision on Plaintiff's claim within 60 days, or within 120 days if "special circumstances" were present. Because subsection 2.3(b) contains no deadline, then under Defendants' (unsupported) implied assertion that the SVPs' vote under subsection 2.3(b) can or should come prior to particular steps in the Plan, Defendants could have continued to delay into perpetuity and never given Plaintiff a review of her claim while waiting on the SVPs to decide whether she was disqualified from receiving benefits. This would not be allowable under either the language of the Plan or the requirements of ERISA, which mandate timeframes that mirror the requirements of the Plan.

2020 WL 7695261, at *9–11. Despite being on notice (from the *Vest* opinion) of the Court's rejection of Defendants' suggestion that the SVPs are properly involved in the Claims Procedure, Defendants make no attempt in briefing to explain how the SVPs are properly involved in *the Claims Procedure* (as opposed to *a decision under subsection 2.3(b) of the Plan*).

Additionally, Defendants claim that "[t]here is no delay on the part of Defendants without a running clock, which could have only been started by Plaintiff requesting an appeal." (Doc. No. 34 at 4-5). However, the April Letter received by Plaintiff did not include any reference to appealing to the SVPs (or any other entity) or include any indication that he could appeal the April Letter. In fact, the appeal contemplated in the Claims Procedure indicates that the Administrative Committee (the entity that already issued the April Letter), is the entity that should be conducting an appeal, thus fostering further confusion (imparted directly to Plaintiff) as to the process Defendants now fault Plaintiff for not having started.

For the reasons discussed, the Complaint (and documents attached to the Complaint) reflect that Defendants here (as in *Vest*) have failed to follow their own Claims Procedure, as laid out in the Plan. 2020 WL 7695261, at *11. Plaintiff is correct that for this analysis, it does not matter whether the April Letter was a decision, *i.e.*, a denial (though the Court will discuss below whether it was a decision, in considering Defendants' alternative request for remand). Plaintiff is therefore deemed to have exhausted his administrative remedies. *See e.g.*, *Vest*, 2020 WL 7695261, at *11; *Nale*, 703 F. Supp. 2d at 720. As a result, the Court finds dismissal to be inappropriate in this case.

C. Remand

As an alternative to dismissal, Defendants make a qualified request to remand the case. Specifically, Defendants ask that the Court remand the case in the event (and only in the event) that the threshold decision discussed immediately below is resolved against it. (Doc. No. 22 at 16). Plaintiff argues that the Court should not remand the case. (Doc. No. 28 at 20-22).

a. Decision

Before discussing whether remand is an appropriate remedy in this case, the Court will discuss whether the April Letter conveyed a decision—by which the Court means a binding decision—on Plaintiff's claim for benefits. The April Letter calls the position conveyed to Plaintiff therein an "opinion [that] is advisory only," *i.e.*, an advisory opinion. Even so, Defendant argues that the position conveyed to Plaintiff in the April Letter *was* a decision. But if (and only if) the Court disagrees and finds that it was *not* a decision, Defendant argues, remand is appropriate. (Doc. No. 22). Plaintiff argues that the advisory opinion was *not* a decision (and that whether or not it was, remand is inappropriate). (Doc. No. 28).

Thus, the parties seem to agree that remand is an inappropriate remedy if the April Letter conveyed a decision on what the parties characterize as a claim for benefits made by Plaintiff.

(Doc. No. 34 at 6). They disagree, though, as to whether remand would be appropriate if the advisory opinion was not a decision.

The April Letter indicated—in what it called an advisory opinion, as noted above—that Plaintiff was violating the non-competition provision (Section 2.3(b)) of the Plan and that so doing "would result in a forfeiture of [Plaintiff's] benefits" under the Plan. (Doc. No. 1-3). But the April Letter contains language that indicates in no uncertain terms that the advisory opinion is not a final decision. Specifically, the April Letter states that:

> Please be advised that under the terms of the SERP II, only Senior Vice-Presidents of the company, by majority vote, are empowered to make formal, binding decisions regarding possible breaches of the confidentiality and non-competition conditions of the SERP II. Consequently, an opinion from the Administrative Committee and/or any member of the Administrative Committee is advisory only.

(Doc. No. 1-3). Therefore, the April Letter expressly disavows that it conveyed a *decision*—as opposed to mere *advisory opinion*—that Plaintiff's claim is forfeited based on a (purported) violation of the non-competition clause. Therefore, the Court finds that the advisory opinion was not a decision.[9] And the April Letter did not purport to render any decision (or even any advisory opinion) that Plaintiff's claim was subject to denial for any other reason. Thus, the April Letter did not convey any decision denying Plaintiff's claim for benefits under the Plan.

    b.  <u>Remand</u>

Whether or not to remand a case to a plan administrator is within the district court's "considerable discretion." *Bailey v. United of Omaha Life Ins. Co.*, 938 F. Supp. 2d 736, 749 (W.D.

---

[9] The Court notes that in *Vest*, the Court found that a similar letter was a decision. In that case, the Court noted that the issue had not been fulsomely briefed by the parties. 2020 WL 7695261, at *8 n.9. The letter in *Vest* was also different from the advisory opinion presently before the Court in several key ways, including that it did not include language specifically stating that it was not a decision.

Tenn. 2013); *see also Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 372–73 (6th Cir. 2009); *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 699 (6th Cir. 2014) (citing *Majestic Star* and *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 703 (8th Cir. 2009)); *Schmittou v. Metro. Life Ins. Corp.*, No. 3:05-CV-0013, 2013 WL 12424939, at *1 (M.D. Tenn. May 21, 2013). The Sixth Circuit has summarized when remand is appropriate in an ERISA case as follows:

> Where a district court determines that the plan administrator erroneously denied benefits, a district court "may either award benefits to the claimant or remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir.2006); *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir.2006) (stating that a district court has two options after determining that a denial of benefits was improper: "it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits") (internal quotation marks omitted); *see also* 29 U.S.C. § 1132(a)(1)(B) (establishing the right of plan participants who bring suit pursuant to ERISA "to recover benefits due to him under the terms of his plan").

> In *Elliott*, this Court set forth the principles relevant to the selection of a remedy for a plan administrator's erroneous denial of benefits. The court in *Elliott* explained that "where the 'problem is with the integrity of [the plan's] decision-making process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir.2005)) (adopting the "flexible approach" of the First Circuit and emphasizing the need for district courts to have "considerable discretion to craft a remedy after finding a mistake in the denial of benefits." (internal quotation marks omitted)).

> Remand therefore is appropriate in a variety of circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete. For example, where the plan administrator fails to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim, the proper remedy is to remand the case to the plan administrator "so that a 'full and fair review' can be accomplished." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008). Courts adopting this position have reasoned that a procedural violation does not warrant the substantive remedy of awarding benefits. *See id.* at 241. Remand also is appropriate where the plan administrator merely "fail[ed] . . . to explain adequately the grounds of [its] decision." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002). In addition to procedural irregularities, an incomplete factual

record provides a basis to remand the case to the plan administrator. *E.g.*, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073–74 (2d Cir.1995) (remanding after determining that "[t]he present record is incomplete").

In contrast, where "there [was] no evidence in the record to support a termination or denial of benefits," an award of benefits is appropriate without remand to the plan administrator. *E.g.*, *DeGrado*, 451 F.3d at 1176; *see Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir.2009) (ordering remand to the plan administrator after determining that the record did not "clearly establish[ ]" that the claimant was entitled to benefits). Thus, where a plan administrator properly construes the plan documents but arrives at the "wrong conclusion" that is "simply contrary to the facts," a court should award benefits. *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001). Under such circumstances, "remand is not justified" to give the plan administrator "a second bite at the apple." *Id.*

*Majestic Star*, 581 F.3d at 373–75. Thus, *Majestic Star* outlines three situations warranting remand: 1) the failure to comply with ERISA's initial or appeal notice requirement, 2) the failure to adequately explain the grounds of a decision (which includes the lack of a decision), and 3) the lack of a factual record. *See Basham v. Prudential Ins. Co. of Am.*, No. 3:11-CV-00464-CRS, 2014 WL 708491, at *8 (W.D. Ky. Feb. 24, 2014) ("[B]y failing to render a decision in the first place, [Defendant] certainly did not 'explain adequately the grounds of [its] decision.'"). An argument could be made that any of these three categories are present here, due to the lack of decision, lack of appeal notice, and lack of a factual record.

In the primary case cited by Defendants, a procedural error by one of the defendant's employees caused the claimant's claim not to be processed and so a decision was never rendered. *Hackney v. Lincoln Nat. Life Ins. Co.*, No. 3:11-CV-268-TBR, 2012 WL 13343, at *5 (W.D. Ky. Jan. 4, 2012). The court found that remand was an appropriate remedy. *Id.* Defendants argue that this case indicates that remand likewise is appropriate in this case, if (as the Court has found)

Plaintiff did not receive a decision on his claim.[10] As noted above, it is true that when there is no decision or denial of benefits in an ERISA case, this typically indicates that remand is the appropriate remedy, due to the lack of a factual and administrative record for the district court to rule on. *E.g.*, *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014) (noting that an appropriate reason to remand is for "further fact-finding to supplement . . . an incomplete record"); *Hackney*, 2012 WL 13343, at *5 (remanding when no determination had been made); *Basham v. Prudential Ins. Co. of Am.*, No. 3:11-CV-00464-CRS, 2014 WL 708491, at *4 (W.D. Ky. Feb. 24, 2014) ("[D]espite the fact that it was properly filed, and in direct violation of ERISA regulations, [Defendant] never rendered a decision on [Plaintiff's long-term disability] claim . . as a result of the foregoing, the administrative record contains little information related to [Plaintiff's long-term disability] claim, making remand to [Defendant] for further development thereof particularly appropriate.").

However, the Court is aware of (and Defendants have cited) no requirement that a lack of decision *mandates* a remand. In *Buck*, the Court ruled on the plaintiff's claim—without remanding—despite the absence a denial letter or adverse determination, as the plaintiff had exhausted his administrative remedies. *Buck v. Kraft Food Glob., Inc.*, No. 3:04-0562, 2007 WL 433240, at *8 (M.D. Tenn. Feb. 2, 2007). In a similar case, where there had been no determination on the plaintiff's ERISA claim, the Court found that the claim had been "effectively denied" and that the plaintiff "properly resorted to other 'available remedies' by seeking judicial review through this lawsuit . . . the Court finds that returning his claim . . . for further consideration is not

---

[10] Though, as has been discussed, Defendants argue primarily that the April Letter was a decision, they argue in the alternative that, if the Court finds the April Letter not to be a decision, remand is the appropriate remedy.

warranted." *Stefansson v. Equitable Life Assur. Soc'y of U.S.*, No. 5:04CV40(DF), 2005 WL 2277486, at *10 (M.D. Ga. Sept. 19, 2005). Therefore, it is apparent that the Court is not required to remand this case due to the lack of a decision.

More generally speaking, it seems inappropriate to order a remand when the Court has found exhaustion of administrative remedies due to Defendants' failure to follow their own Claims Procedure. The reasoning behind deeming a plaintiff exhausted is that a plaintiff should not be required to continue to attempt to wade through a claims procedure that does not comply with the law, and remanding such a claim to an employer who has shown no indication that it plans to follow the law or the internal procedures would contravene this purpose. *See e.g.*, Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 FR 70246-01 ("Claimants should not be required to continue to pursue claims through an administrative process that does not comply with the law [meaning the ERISA regulations, which often refer to the relevant plan and generally treat a lack of compliance with appropriate plan provisions as a lack of compliance with the law]. At a minimum, claimants denied access to the statutory administrative review process should be entitled to take that claim to a court under section 502(a) of the Act for a full and fair hearing on the merits of the claim."); *Coontz v. Metro. Life Ins. Co.*, No. 1:17-CV-00015-GNS, 2017 WL 4227656, at *7 (W.D. Ky. Sept. 22, 2017) ("Furthermore, the regulations clearly permit a claimant to seek judicial review of his or her claim determination in the event the plan administrator fails to reach a timely decision on the claim. *See* 29 C.F.R. § 2560.503-1(1). [Defendant] does not offer any explanation as to why it should essentially be excused from complying with the time limits set forth in Section 2560.503-1 (i)(1)(i). The Court therefore denies [Defendant's] request for remand."); *McDowell v. Standard Ins. Co.*, 555 F. Supp. 2d 1361, 1373 (N.D. Ga. 2008) ("In sum, plaintiff is deemed to

have exhausted his administrative remedies, and therefore, defendant's prayer for remand or dismissal on exhaustion grounds is denied.").

This seems particularly to be the case when the defendant's culpability is the reason that the plaintiff has been unable to get a decision or proceed through the claims procedure, as automatically requiring a remand when there is no decision would allow a plan administrator to be derelict, not issue a decision, and be assured a remand from the district court—without any assurance that the plan administrator will proceed properly on remand. As one court explained:

> In light of the Court's conclusion regarding Plaintiff's satisfaction of ERISA's exhaustion requirement, the Court finds that remand is not warranted.
>
> Indeed, to permit Defendants to request remand, after failing to process Plaintiff's claim for 15 months, and only after Plaintiff has suffered the expense and delay of litigation, runs entirely contrary to the purposes of exhaustion . . . Granting Defendants' request for remand at this stage of the proceeding based only on their own failure to process the claimant's appeal would create a perverse incentive for administrators to fail to comply with their ERISA obligations and force claimants to resort first to litigation in order to obtain the initial administrative review required.

*Martinez-Claib v. Bus. Men's Assur. Co. of Am.*, No. 206CV479FTM34SPC, 2008 WL 899294, at *6 (M.D. Fla. Mar. 31, 2008); *see also Buck*, 2007 WL 433240, at *8 (not ordering remand, and noting that "Defendant's culpability is high"); *Hackney*, 2012 WL 13343, at *3 (ordering remand, but noting that there was no evidence of culpability in the failure to render a determination due to employee error).

The Court has already found that Plaintiff's administrative remedies are deemed exhausted by Defendants' lack of compliance with the Claims Procedure. The Court will not remand Plaintiff's claim to Defendants, when there is no indication that Defendants will handle the claim in accordance with the Claims Procedure laid out in the Plan. Though the Court has found that no decision was ever made during the administrative process in this case (thus indicating the scenarios

set forth in *Majestic Star* are present), other Courts have not found that a lack of decision mandates a remand, and instead have kept cases where no decision was made by the plan administrator. Therefore, the Court exercises its discretion not to remand the current case for further administrative proceedings.[11]

Therefore, the Court does not find that remand is an appropriate remedy, and Defendants' alternative request will be denied.[12]

## CONCLUSION

Defendants' Motion is grounded essentially on Defendants' contention that things should have gone down differently—that various things should have been done but were not—at the administrative stage. The Court agrees. But Defendants are wrong to blame this on Plaintiff. The things that should have occurred, but did not occur, either (i) were Defendants' responsibility to ensure the occurrence of; and/or (ii) did not occur because Defendants failed to properly follow their own Claims Procedure. Under these circumstances, Plaintiff should not be tagged with failure to exhaust his administrative remedies, and Defendant should not receive the benefit of remand.

---

[11] Defendants arguably would have a more colorable argument for remand in this case than they did in *Delauter*, were the Court permitted herein to consider the excluded email chain. That email chain suggests that it would have been reasonable for Defendants to believe that Plaintiff was not looking for anything more out of the administrative process, such as a real benefits determination (denial) identified as such, or a better explanation for any purported denial, or the opportunity to appeal. But Defendants do not invoke the email chain in making their alternative request for remand, let alone provide a reason why these emails could be considered in connection with this particular request even though otherwise subject to exclusion on this Motion. The Court will not make this argument for Defendants, and so it cannot rely on this email chain to distinguish *Delauter* and reach a different outcome on the request for remand.

[12] The Court notes that considerations relevant to this discussion include what all is encompassed within the administrative record, and whether or not discovery will be allowed, in this matter. Currently pending before the Court is Plaintiffs' Motion to Compel Defendants to Supplement the Administrative Record and to Take Discovery. (Doc. No. 36). The Court expresses no opinion on the merits of that motion at the current juncture.

For the reasons discussed herein, the Motion will be denied.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE